UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| KENDRA and LANCE ANDERSON,<br><br>          Plaintiffs,<br><br>     v.<br><br>U.S. BANK, N.A. and DOES 1-10,<br><br>          Defendants. | Case No.: 5:13-cv-00636-PSG<br><br>**ORDER GRANTING-IN-PART DEFENDANT'S MOTION TO DISMISS**<br><br>**(Re: Docket No. 26)** |

Before the court is Defendant U.S. Bank, N.A.'s motion to dismiss all claims in the first amended complaint ("FAC").[1] Plaintiffs Kendra and Lance Anderson oppose. The parties appeared for a hearing.[2] After considering the arguments, the court GRANTS-IN-PART Defendant's motion.

**I. BACKGROUND**

Although the facts of this case have been spelled out in the court's prior order granting-in-part U.S. Bank's motion to dismiss the Andersons' original complaint,[3] a review is warranted here.

---

[1] *See* Docket No. 26.

[2] *See* Docket No. 34.

1

Case No.: 5:13-cv-00636-PSG
ORDER GRANTING-IN-PART DEFENDANT'S MOTION TO DISMISS

The court draws these facts from the Andersons' FAC except where otherwise noted. Plaintiffs reside at 2326 Antonelli Court, Santa Cruz, California 95062.[4] On or about March 21, 2007, Plaintiffs obtained a residential loan and executed a promissory note ("the Note") in commitment to repay the lender, Washington Mutual Bank, FA ("WaMu").[5] Plaintiffs also executed a deed of trust ("DOT"), on which WaMu was identified as the lender and California Reconveyance Company ("CRC") was identified as the trustee.[6]

At some point following the execution of these mortgage instruments, WaMu entered receivership under the Federal Deposit Insurance Corporation ("FDIC"), which sold many of WaMu's assets – including Plaintiffs' DOT and Note – to JP Morgan Chase Bank N.A. ("JP Morgan").[7] The Note was then combined with other notes into a "Mortgage Backed Security" issued by WAMU Mortgage Pass-Through Certificates Series 2007-HY6 Trust ("Mortgage Pass-Through Trust").[8] On May 18, 2012, the deed of trust was recorded as assigned to U.S. Bank.[9]

On June 7, 2012, Title Trust Deed Service Co. ("TTDS"), representing itself as the trustee of the DOT, recorded a notice of default and election to sell ("NOD") in Santa Cruz County.[10] On

---

[3] *See* Docket No. 21.

[4] *See* Docket No. 25 at ¶ 1.

[5] *See id.* at ¶¶ 13-14.  Plaintiffs obtained a residential loan from WaMu in the amount of $775,000 secured by a deed of trust encumbering the property on March 28, 2007.  *See* Docket No. 27-1, Ex. 2.

[6] *See id.* at ¶ 15.

[7] *See id.* at ¶ 16.  On September 25, 2008, the Federal Deposit Insurance Corporation ("FDIC") and JP Morgan entered into an agreement whereby JP Morgan acquired all of WaMu's "servicing rights and obligations."  *See* Docket No. 27-2, Ex. 3.

[8] *See* Docket No. 25 at ¶ 22.

[9] *See* Docket No. 27-3, Ex. 4.

[10] *See* Docket No. 25 at ¶ 17; *see also* Docket No. 27-3, Ex. 5 (listing a past-due amount of $26,764.76).

2
Case No.: 5:13-cv-00636-PSG
ORDER GRANTING-IN-PART DEFENDANT'S MOTION TO DISMISS

September 19, 2012, TTDS, again representing itself as the trustee, recorded a notice of trustee's sale ("NOTS") in Santa Cruz County.[11] U.S. Bank, N.A. is the current trustee for the Mortgage Pass-Through Trust and JP Morgan is the servicer of their loan.[12]

Plaintiffs contend that WaMu's sale of the Note and the underlying DOT to the Mortgage Pass-Through Trust did not comply with the trust's pooling service agreement ("PSA").[13] They specifically contend that the PSA requires an unbroken chain of title ending in assignment to the Mortgage Pass-Through Trust before the trust's closing, and that Defendants failed to comply with this requirement.[14] As a result WaMu failed to assign effectively the Note to U.S. Bank as the trustee of the Mortgage Pass-Through Trust and so neither U.S. Bank nor JP Morgan has standing to foreclose on the disputed property.[15] Plaintiffs also contend that they are third-party beneficiaries to the PSA,[16] and that the timing of the assignment reveals that the DOT was either abandoned or never assigned to a new lender.[17]

Based on these factual allegations, Plaintiffs claim: (1) they are entitled to a quiet title declaration naming them as the only parties with interest in the Subject Property, (2) violation of the Real Estate Settlement Procedures Act ("REPSA"), (3) violation of RICO, (4) breach of contract, (5) breach of duty of good faith and fair dealing, (6) violation of the Fair Debt Collection Practices Act, (7) violation of California Civil Code § 17200, and (8) unjust enrichment.

---

[11] *See* Docket No. 25 at ¶ 18; *see also* Docket No. 27-3, Ex. 6.

[12] *See* Docket No. 25 at ¶¶ 23-24.

[13] *See id.* at ¶ 38.

[14] *See id.* at ¶¶ 52-54.

[15] *See id.* at ¶ 39.

[16] *See id.*

[17] *See id.* at ¶ 63.

## II. LEGAL STANDARDS

### A.   Motion to Dismiss

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[18] When a plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face," the complaint may be dismissed for failure to state a claim upon which relief may be granted.[19] A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[20] Under Fed. R. Civ. P. 12(b)(6), "dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."[21] Dismissal with prejudice and without leave to amend is appropriate if it is clear that the complaint could not be saved by amendment.[22]

### B.   RICO

Under RICO it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."[23] "The elements of a civil RICO claim are as follows: '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as predicate acts) (5) causing injury to plaintiff's business or property.'"[24]

---

[18] Fed. R. Civ. P. 8(a)(2).

[19] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[20] *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

[21] *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

[22] *See Eminence Capital, LLC v. Asopeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

[23] 18 U.S.C. § 1962(c).

### C. Breach of Implied Covenant of Good Faith and Fair Dealing

"It has long been recognized in California that every contract contains an implied covenant of good faith and fair dealing that neither party will injure the right of the other party to receive the benefits of the agreement."[25] "The covenant protects the express covenants or promises of the contract."[26] The "factual elements necessary to establish a breach of the covenant of good faith and fair dealing are: (1) the parties entered into a contract; (2) the plaintiff fulfilled his obligations under the contract; (3) any conditions precedent to the defendant's performance occurred; (4) the defendant unfairly interfered with the plaintiff's rights to receive the benefits of the contract; and (5) the plaintiff was harmed by the defendant's conduct."[27] "An implied covenant claim requires the plaintiff to 'show that the conduct of the defendant, whether or not it also constitutes a breach of a consensual contract term, demonstrates a failure or refusal to discharge contractual responsibilities, prompted not by an honest mistake, bad judgment or negligence but rather by a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement.'"[28]

---

[24] *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005) (*quoting Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996)).

[25] *In re Apple In-App Purchase Litig.*, 855 F. Supp. 2d 1030, 1041 (N.D. Cal. 2012) (citing *Wolf v. Walt Disney Pictures & Tel.*, 162 Cal. App. 4th 1107, 1120 (2008)).

[26] *Id.* at 1041-42 (citing *Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.*, 2 Cal. 4th 342, 373 (1992)).

[27] *Rosenfeld v. JP Morgan Chase Bank, N.A.*, 732 F. Supp. 2d 952, 968 (N.D. Cal. 2010).

[28] *Williams v. Wells Fargo Bank, N.A.*, Case No.: 5:13-cv-03387-EJD, 2013 WL 5444354, at *2 (N.D. Cal. Sept. 30, 2013) (*quoting Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (1990)).

# III. DISCUSSION

## A.   Request for Judicial Notice

U.S. Bank requests the court take that judicial notice of various foreclosure-related documents recorded in the Santa Cruz County Recorder's Office (Exhibits 1, 2, 4, 5, and 6).[29] U.S. Bank also requests the court take judicial notice of a purchase and assumption agreement ("P&A Agreement") between the FDIC and JP Morgan regarding the transfer of WAMU assets to JP Morgan (Exhibit 3).[30] The court may take judicial notice of a "fact that is not subject to reasonable dispute because it is generally known" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."[31] Plaintiffs have not objected to the judicial notice. The authenticity of the foreclosure-related documents is not in dispute and may be verified by resort to the public record, and the P&A Agreement may be accessed from the FDIC's website.[32] The court, however, will not rely on facts contained within the documents that reasonably may be subject to dispute.[33] U.S. Bank's request for judicial notice therefore is GRANTED as to all documents.

## B.   U.S. Bank's Security Interest in the Property

Because the Andersons' contention that U.S. Bank's security interest on the property is invalid underlies their entire complaint, the court will turn there first.

### 1.   Ownership of the Loan

U.S. Bank relies on *Gomes v. Countrywide Home Loans, Inc.* for the proposition that a

---

[29] *See* Docket No. 27 at 2.

[30] *See id.*

[31] Fed. R. Evid. 201(b).

[32] *See* Fed. R. Evid. 201(b)(2).

[33] *See Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (finding the district court erred in relying on disputed facts contained within documents that otherwise were the proper subject of judicial notice). *See also* Fed. R. Evid. 201(b).

6
Case No.: 5:13-cv-00636-PSG
ORDER GRANTING-IN-PART DEFENDANT'S MOTION TO DISMISS

"trustee, mortgagee, or beneficiary, or any of their authorized agents" may initiate foreclosure proceedings without a preliminary judicial action to determine whether they are in fact authorized to do so.[34] Pursuant to California's nonjudicial foreclosure scheme, U.S. Bank argues it was not required to have ownership of the loan to foreclose on Plaintiffs' property.[35]

The court has already accepted, and again accepts, U.S. Bank's argument that no judicial process is required as a prerequisite to initiation of foreclosure proceedings.[36]

### 2. Record Assignment

The Andersons argue that because the assignment of the deed of trust to JP Morgan was never recorded, U.S. Bank's efforts to foreclose on the loan are invalid.[37] U.S. Bank responds that California law requires no such recorded assignment for a beneficial interest of a deed of trust.[38] For example, in *Calvo v. HSBC Bank USA, N.A.* the court rejected the plaintiff's argument that a record of assignment of the deed of trust from the original lender to HSBC was required before HSBC could invoke the power of sale. In this case, U.S. Bank argues that neither WaMu nor

---

[34] 192 Cal. App. 4th 1149, 1155-56 (2001) (requiring the "recognition of the right to bring a lawsuit to determine a nominee's authorization to proceed with foreclosure on behalf of the noteholder would fundamentally undermine the nonjudicial nature of the process and introduce the possibility of lawsuits filed solely for the purpose of delaying" valid foreclosures).

[35] *Edwards v. Aurora Loan Servs., LLC*, Case No.: 2:10-cv-00092-LKK, 2011 WL 1668926, at *8 (E.D. Cal. May 2, 2011) ("California Civil Code § 2924 ('Section 2924') does not require a 'judicial determination' of ownership as a prerequisite to invoking nonjudicial foreclosure procedures. Where a deed of trust contains an 'express provision granting a power of sale,' the beneficiary may pursue non-judicial foreclosure, commonly referred to as a trustee's sale, under Section 2924."); *Hague v. Wells Fargo Bank, N.A.*, Case No.: 3:11-02366-TEH, 2011 WL 3360026, at *3 (N.D. Cal. Aug. 2, 2011) (the foreclosing party "need not demonstrate that it has 'full and unencumbered legal title' in order to foreclose" on the borrower's property).

[36] *See* Docket No. 21 at 6 ("Plaintiffs seek from this court what California courts already have determined is not available under the foreclosure statutes: a determination of whether Defendants have the right to initiate foreclosure. Because California's foreclosure process does not provide the recourse Plaintiffs seek, the motion to dismiss the declaratory relief request as premised on a challenge to Defendants' authority to initiate foreclosure is GRANTED WITHOUT LEAVE TO AMEND.")

[37] *See* Docket No. 25 at ¶¶ 59, 76.

[38] *See* Cal. Civ. Code §§ 2932, 2932.5; *Calvo v. HSBC Bank USA, N.A.*, 199 Cal. App. 4th 118 (2001) (Section 2932.5 "does not apply when power of sale is conferred in a deed of trust rather than a mortgage").

7
Case No.: 5:13-cv-00636-PSG
ORDER GRANTING-IN-PART DEFENDANT'S MOTION TO DISMISS

JP Morgan were required to record any assignment of beneficial interest in the deed of trust.[39] U.S. Bank further argues that as the trustee of record it was entitled to initiate foreclosure proceedings pursuant to Cal. Civ. Code § 2924(a)(1) which spells out that a "trustee, mortgagee, or beneficiary, or any of their authorized agents" may initiate foreclosure proceedings.

The court agrees with U.S. Bank that neither the statutory framework, nor the relevant case law, requires a recorded assignment of beneficial interest prior to U.S. Bank initiating the foreclosure process.

### 3. Standing

U.S. Bank argues that the case law is settled that the Andersons do not have standing to challenge the securitization of the loan in this case.[40] Because the Andersons are not investors of the loan trust, they have no standing to challenge the validity of the securitization of the loan. This court has already agreed with U.S. Bank that the Andersons do not have standing under California law to seek a determination of whether U.S. Bank has the right to initiate foreclosure.[41] The court again finds the Andersons do not have standing to challenge the securitization of their loan.

---

[39] *See De Jourday v. JP Morgan Chase Bank, N.A.*, Case No.: 11-cv-1052-LAB-MDD, 2011 WL 6325976, at *4 (S.D. Cal. Dec. 16, 2011) (*quoting Calvo v. HSBC Bank USA, N.A.,* 199 Cal. App. 4th 118, 122 (2d Dist. 2011) (noting that it is long established that "an assignment of the beneficial interest in a debt secured by real property must be recorded in order for the assignee to exercise the power of sale applies only to a mortgage" and not to a deed of trust and finding "no merit" in the contention that a foreclosure sale should be set aside because the seller "invoked the power of sale without complying with the requirement of section 2932.5 to record the assignment of the deed of trust from the original lender" to the assignee)).

[40] *Bascos v. Fed. Home Loan Mortgage Corp.*, Case No.: 11-cv-3968-JFW-JCX, 2011 WL 3157063, at *6 (C.D. Cal. July 22, 2011) ("To the extent Plaintiff challenges the securitization of his loan because Freddie Mac failed to comply with the terms of its securitization agreement, Plaintiff has no standing to challenge the validity of the securitization of the loan as he is not an investor of the loan trust.").

[41] Docket No. 21 at 6 (*quoting* Gomes, 192 Cal. App. 4th at 1154 ("The recognition of the right to bring a lawsuit to determine a nominee's authorization to proceed with foreclosure on behalf of the noteholder would fundamentally undermine the nonjudicial nature of the process and introduce the possibility of lawsuits filed solely for the purpose of delaying valid foreclosures.").

U.S. Bank further argues that it has not lost its interest in the loan because it was assigned to a trust pool.[42] The court agrees that this alleged infirmity does not invalidate U.S. Bank's power of sale.[43]

### C.  The Andersons' Claims

Having addressed the Andersons' overarching objections to U.S. Bank's purportedly invalid interest in the disputed property, the court next turns to the specific claims that are the subject of this motion.

#### 1.  Quiet Title

Plaintiffs seek to quiet title to the property in their favor.  "A quiet title action must include: (1) a description of the property in question; (2) the basis for plaintiff's title; and (3) the adverse claims to plaintiff's title."[44]  To "satisfy the second requirement, plaintiff must allege that he has discharged his debt, regardless to whom it is owed."[45]  In other words, to state a claim, plaintiffs "must allege a valid and viable offer of tender."[46]

U.S. Bank argues that the Andersons' claim for quiet title must be dismissed because Defendants have not offered to tender the outstanding debt – $26,764.65 – on the loan in this

---

[42] *See Benham v. Aurora Loan Servs.*, Case No.: 3:09-cv-2059-SC, 2009 WL 2880232, at *3 (N.D. Cal. Sept. 1, 2009) (noting that courts "have summarily rejected the argument" that lenders "lose their power of sale pursuant to the deed of trust when the original promissory note is assigned" to a trust pool); *Hafiz v. Greenpoint Mortg. Funding, Inc.*, 652 F. Supp. 2d 1039, 1043 (N.D. Cal. 2009) (rejecting plaintiff's argument that "defendants have no right to foreclose" based "on the erroneous theory that all defendants lost their power of sale pursuant to the deed of trust when the original promissory note was assigned to a trust pool" and noting "the argument is both unsupported and incorrect").

[43] Because the court holds the Andersons do not have standing to challenge the securitization of the loan and U.S. Bank retained its power of sale, the court does not reach U.S. Bank's additional argument that Andersons' challenge to the securitization fails for lack of prejudice.

[44] *Sowinski v. Wells Fargo Bank, N.A.*, Case No. 3:11-cv-6431-SC, 2012 WL 5904711, at *2 (N.D. Cal. Nov. 26, 2012) (internal citations and quotations omitted).

[45] *Id.* (internal citations and quotations omitted).

[46] *Id.*; *see also Shimpones v. Stickney*, 219 Cal. 637, 649 (1934) (A "mortgagor cannot quiet his title against the mortgagee without paying the debt" secured.).

9
Case No.: 5:13-cv-00636-PSG
ORDER GRANTING-IN-PART DEFENDANT'S MOTION TO DISMISS

case.[47] But the FAC plainly alleges the Andersons "submitted" an "offer of tender" to Defendants.[48] Because the Andersons have alleged that they tendered the balance of their loan, their claim for quiet title survives. Dismissal is not warranted as to this claim.

### 2. REPSA

The Real Estate Settlement Practices Act ("REPSA") requires servicers to provide written responses to qualified written requests ("QWR"s) seeking "information relating to the servicing" of a loan.[49] The Andersons may recover for the loss stemming from the REPSA violation, not for all loses related to foreclosure activity.[50] To recover, the Andersons must establish a causal nexus between the violation and the alleged damages.[51]

U.S. Bank argues that the Andersons' allegations that it failed to respond to an unspecified request are inadequately pleaded because they do not allege (1) details relating to the QWR including when the QWR was submitted and (2) the Andersons fail to provide a causal nexus connecting the RESPA violation to their purported damages.

The court agrees that claim two is inadequately pleaded at this point. The nub of the Andersons' second claim reads: "Plaintiffs sent request to the Defendant(s) based upon information relative to their property and Note. Defendant(s) did not answer and/or just gave partial answers to Plaintiffs. Defendant(s) willing did not respond to such information because the information would

---

[47] *See* Docket No. 27-3, Ex. 5 ($26,764.76 outstanding on the loan as of June 7, 2012).

[48] *See* Docket No. 25 at ¶ 87 ("Plaintiffs' [sic] allege herein that the original debt incurred has been discharged by Plaintiffs' offer of tender submitted to Defendants.").

[49] 12 U.S.C. § 2605(e)(1)(A).

[50] *See Lal v. American Home Servicing, Inc.*, 680 F. Supp. 2d 1218, 1223 (E.D. Cal. 2010) (noting the "loss alleged must be related to the REPSA violation" itself).

[51] *See Torres v. Wells Fargo Home Mortgage, Inc.*, Case No.: 4:10-cv-04761-CW, 2011 WL 11506, at *8 (N.D. Cal. Jan. 4, 2011) (citing *Lawther v. Onewest Bank*, Case No.: 3:10-cv-0054-RS, 2010 WL 4936797, at *6-7 (N.D. Cal. Nov. 30, 2010)) ("The plaintiff must include, at the pleading stage, a demonstration of some actual pecuniary loss. The plaintiff must also allege a causal relationship between the alleged damages and the RESPA violation." (internal citation omitted)).

have prevented any foreclosure or possible foreclosure."[52]  These allegations – read together – do not meet Fed. R. Civ. P. 8(a).[53]  The allegations do not provide notice as to what information was sought, when it was sought, and what, if any, objections U.S. Bank lodged.  Without more, the court and U.S. Bank do not have adequate notice of the nature of the REPSA violation.  Because the court does not find that amendment would be futile, the Andersons are granted leave to amend as to this claim.

### 3.  RICO

The Andersons' third claim alleges a RICO violation.[54]  U.S. Bank argues that the Andersons' RICO claim fails because there is no nexus between the Andersons' general allegations of U.S. Bank's "tens of thousands" of racketeering activities in a "dense pattern" over the last decade and specific acts causing injury to the Andersons.[55]  The court agrees.  All the complaint suggests is that RICO violations led to the Andersons losing large sums.[56]  Because the RICO claim is not properly pleaded, it must be dismissed.  Because the court is not convinced that amendment would be futile, the Andersons are granted leave to amend with respect to this claim.

### 4.  Breach of Contract

---

[52] Docket No. 25 at ¶¶ 93-95.

[53] Fed. R. Civ. P. 8(a) ("A pleading that states a claim for relief must contain: (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.").

[54] *See* Docket No. 25 at ¶ 111 ("Defendant(s) were engaged in 'racketeering activity' within the meaning of 18 U.S.C. § 1961(1)," in part, by collecting unlawful debts).

[55] Docket No. 25 at ¶ 113 ("The Defendant(s) each committed and/or aided and abetted the commission of tens of thousands of acts of racketeering activity in a dense pattern over a period of ten years.").

[56] *Cf. Phong Tran v. Bank of Am., N.A.*, Case No.: 5:12-cv-4507-PSG, 2013 WL 2368048, at *5 (N.D. Cal. May 29, 2013) ("Although [the plaintiff's] complaint contains an exposition of the ills that the banking industry, including Defendants, have wrought on the American economy, the judicial system, and homeowners, it fails to include the details of the alleged mail and wire fraud supposedly giving rise to the RICO claim." (citation omitted)).

11
Case No.: 5:13-cv-00636-PSG
ORDER GRANTING-IN-PART DEFENDANT'S MOTION TO DISMISS

Read favorably, the complaint alleges that U.S. Bank breached its contract with the Andersons by violating Section 22 which required notice of acceleration of the terms of the loan and an opportunity to cure the default.[57] "To assert a cause of action for breach of contract, a plaintiff must plead: (1) the existence of a contract; (2) the plaintiff's performance or excuse for non-performance; (3) the defendant's breach; and (4) damages to the plaintiff as a result of the breach."[58] Because the Andersons have not alleged performance under the contract and have not proffered a valid excuse for non-performance their breach of contract claim cannot survive.[59] In light of the judicially noticed past-due amount on the Andersons' loan, the court finds amendment as to this claim would be futile. The claim is dismissed without leave to amend.

### 5. Breach of Duty of Good Faith and Fair Dealing

The Andersons allege U.S. Bank has "breached their duty of good faith and fair dealing implied" in the mortgage note by seeking attorneys' fees in excess of their actual costs and expenses related to the foreclosure proceedings.[60] This claim is insufficiently pleaded, because the Andersons have not alleged performance under the contract.[61] As above, because the court

---

[57] *See* Docket No. 25 at ¶¶ 120-137.

[58] *Lyons v. Bank of Am., NA*, Case No.: 4:11-cv-1232-CW, 2011 WL 6303390, at*1 (N.D. Cal. Dec. 16, 2011) (citing *Armstrong Petrol. Corp. v. Tri–Valley Oil & Gas Co.*, 116 Cal. App. 4th 1375, 1391 n.6 (2004)).

[59] As outlined above, the court takes judicial notice of the "Notice of Default and Election To Sell Under Deed of Trust" recorded on June 7, 2012 in the Official Records of the County of Santa Cruz as instrument number 20120027082, listing a past-due amount of $26,764.76. *See* Docket No. 27-3, Ex. 5.

[60] *See* Docket No. 25 at ¶¶ 138-142.

[61] Because the Andersons have not fulfilled their obligations under the contract – they remain in default (*see supra* note 59) – the Andersons cannot establish a breach of covenant of good faith and fair dealing under California law. *Rosenfeld*, 732 F. Supp. 2d at 968 (The "factual elements necessary to establish a breach of the covenant of good faith and fair dealing are: (1) the parties entered into a contract; (2) the plaintiff fulfilled his obligations under the contract; (3) any conditions precedent to the defendant's performance occurred; (4) the defendant unfairly interfered with the plaintiff's rights to receive the benefits of the contract; and (5) the plaintiff was harmed by the defendant's conduct.").

12
Case No.: 5:13-cv-00636-PSG
ORDER GRANTING-IN-PART DEFENDANT'S MOTION TO DISMISS

believes amendment with respect to this claim would be futile, it is dismissed without leave to amend.

### 6. Fair Debt Collection Practices Act ("FDCPA")

The Andersons allege that U.S. Bank violated the Fair Debt Collection Practices Act by attempting to collect on the loan under "false pretenses" and falsely claiming that they had authority to collect on the debt.[62]

U.S. Bank responds that the FDPCA is inapplicable in this case. The FDCPA applies only to debt collectors, defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."[63] The "law is settled that a creditor seeking non judicial foreclosure on a property is not a debt collection activity under the FDCPA. Generally, non judicial foreclosure actions do not constitute 'debt collection activity' under the FDCPA."[64] A debt collector does not include "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity" concerns "a debt which was not in default at the time it was obtained by such person."[65] Lenders and mortgage companies are therefore "not 'debt collectors' within the meaning of the FDCPA."[66]

---

[62] Docket No. 25 at ¶ 148.

[63] 15 U.S.C. § 1692(a)(6).

[64] *Williams v. Bank of Am.*, Case No: 2:12-cv-2513-JAM-AC, 2013 WL 1907529, at *6 (E.D. Cal. May 7, 2013); *see also Hulse v. Ocwen Fed. Bank, FSB*, 195 F. Supp. 2d 1188, 1204 (D. Or. 2002) ("[The] activity of foreclosing on [a] property pursuant to a deed of trust is not the collection of a debt within the meaning of the" FDCPA).

[65] *Fitzgerald v. PNC Bank*, 2011 WL 1542138, at *3 (D. Idaho 2011) (*quoting* 15 U.S.C. § 1692a(6)(F)).

[66] *Cherian v. Countywide Home Loans, Inc.*, 2012 WL 2865979, *4 (D. Idaho 2012) (citing *Ines v. Countrywide Home Loans, Inc.*, 2008 WL 2795875, *3 (S.D. Cal. 2008) (citing *Williams v. Countrywide*, 504 F.Supp.2d 176, 190 (S.D. Tex. 2007) ("Mortgage companies collecting debts are not 'debt collectors.'"))).

13
Case No.: 5:13-cv-00636-PSG
ORDER GRANTING-IN-PART DEFENDANT'S MOTION TO DISMISS

The court agrees with U.S. Bank.  Because U.S. Bank is not a debt collector under the statute and any amendment of this claim would be futile, the Andersons' FDCPA claim is dismissed without leave to amend.

### 7. Section 17200

The Andersons next allege a violation of Section 17200 by U.S. Bank for failing to comply with Cal. Civ. Code § 1095.[67]  Specifically, the Andersons allege that U.S. Bank failed to disclose "the principal for which documents were being executed and recorded in violation of Cal. Civ. Code section 1095."[68]

U.S. Bank responds that a defense to the underlying statutory violation is a defense to liability pursuant to Section 17200.  Cal. Civ. Code § 1095 requires that when "an attorney in fact executes an instrument transferring an estate in real property, he must subscribe the name of his principal to it, and his own name as attorney in fact."  In this case the assignment of the deed of trust recorded in May 2012 was signed by Lauren A. Noble "as VICE PRESIDENT of JPMORGAN CHASE BANK."[69]  Because that assignment plainly identifies JP Morgan Chase Bank as the principal and is uncontroverted, U.S. Bank cannot be liable under Section 17200.

The court agrees with U.S. Bank.  The principal is identified.  Because the court finds amendment would be futile, this claim is dismissed without leave to amend.

### 8. Unjust Enrichment

The Andersons finally bring a claim for unjust enrichment.  Unjust enrichment is a "quasi-contractual claim in order to avoid unjustly conferring a benefit upon a defendant where

---

[67] *See* Docket No. 25 at ¶¶ 169-172.

[68] *Id.* at ¶ 169.

[69] Docket No. 27-3, Ex. 4.

14
Case No.: 5:13-cv-00636-PSG
ORDER GRANTING-IN-PART DEFENDANT'S MOTION TO DISMISS

there is no valid contract."[70] "Both California and federal courts of this district are divided as to whether there is an independent cause of action for restitution/unjust enrichment—some courts have declined to recognize such a cause of action, holding that it is merely a remedy that rests on a separate claim, while others have permitted it to proceed independently."[71] Given that the Andersons' quasi-contract theory rests on the same theories covered by their other claims, which also provide for restitution as a remedy, the claim is "merely duplicative of statutory or tort claims" and must be dismissed.[72] Because the court finds amendment would be futile, this claim is dismissed without leave to amend.

The Andersons may file any amended complaint consistent with this order within fourteen days.

**IT IS SO ORDERED.**

Dated: January 6, 2014

_____
PAUL S. GREWAL
United States Magistrate Judge

---

[70] *Rosal v. First Fed. Bank of Cal.*, 671 F. Supp. 2d 1111, 1113 (N.D. Cal. 2009).

[71] *See, e.g., Park v. Welch Foods, Inc.*, Case No: 5:12-cv-06449-PSG, 2013 WL 5405318, at *5 (N.D. Cal. Sept. 26, 2013) (citing *Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295, 1307 (2011) ("Unjust enrichment is not a cause of action, just a restitution claim")); *see also McBride v. Boughton*, 123 Cal. App. 4th 379, 387 (2004) (holding that the plaintiff may choose to seek restitution on a quasi-contract theory); *Khasin v. Hershey Co.*, Case No.: 5:12-cv-01862-EJD, 2012 WL 5471153, at *9 (N.D. Cal. Nov. 9, 2012) (interpreting unjust enrichment claim as akin to quasi-contract claim and allowing it to proceed); *Brazil v. Dole Food Co., Inc.*, Case No. 5:12-cv-01831–LHK, 2013 WL 1209955, at *18 (N.D. Cal. Mar. 25, 2013) (ruling that unjust enrichment is not an independent cause of action).

[72] *In re Apple & AT&T iPad Unlimited Data Plan Litig.*, 802 F. Supp. 2d 1070, 1077 (N.D. Cal. 2011).