Kendra and Lance Anderson, Plaintiffs Pro Se
2326 Antonelli Court
Santa Cruz, CA 95062
Tele: (831) 234-5156
santacruzlance@gmail.com

**FILED**

JAN 1 6 2014

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### AT SAN JOSE

Case No.: **5:13-cv-00636-PSG**

KENDRA and LANCE ANDERSON,

      Plaintiffs,

v.

1) US BANK, N.A., as Trustee, Successor in Interest to Bank of America, National Association, as Trustee as Successor by Merger to Lasalle Bank, National Association as Trustee for WAMU MORTGAGE PASS THROUGH CERTIFICATES SERIES 2007-HY6 TRUST; 2) JPMORGAN CHASE BANK N.A.; 3) Does 1-10 inclusive;

      Defendants

**PLAINTIFFS' SECOND AMENDED COMPLAINT**

## PLAINTIFFS' SECOND AMENDED COMPLAINT

By the order issued by this honorable court on or about January 6, 2014, Plaintiffs, Kendra and Lance Anderson, (hereinafter referred as "Plaintiffs"), submit this second amended complaint, and allege herein as follows:

1

1.      Plaintiffs are residents of the county of Santa Cruz, State of California and the lawful owners of a parcel of Real Property, (hereinafter "Subject Property"), commonly known as: 2326 Antonelli Court Santa Cruz, CA 95062. The Subject Property is located in Santa Cruz County, State of California.

2.      Through belief, Defendant, US Bank, National Association, ("US BANK"), is and at all times herein mentioned was conducting ongoing business in the County of Santa Cruz, State of California. Through belief, US BANK is a national banking association organized and existing under the laws of the United States of America. The address of its headquarters and principal place of business is 425 Walnut Street Cincinnati, OH 45202.

3.      Through belief, Defendant, JP Morgan Chase Bank, N.A., ("JPMORGAN"), is a national association organized under the laws of the New York with its headquarters and principal place of business located at 4 New York Plaza New York, NY 10004. At all relevant times, JPMORGAN has transacted and continues to transact business throughout the State of California, including Santa Cruz County.

4.      Plaintiffs are unaware of the true names of Defendants sued as DOES 1 through 10 and therefore sue these Defendants by fictitious names as persons unknown claiming any legal or equitable right, title, estate, lien, or interest in the Subject Property described in the Complaint. Plaintiffs will amend this complaint to allege their true names and capacities when ascertained.

## JURISDICTION

5.      This Court has both personal and subject matter jurisdiction to hear this case pursuant to 28 USC § 1332.

6.      Plaintiffs are residents of Santa Cruz County, State of California.

7.      The Defendants are business entities organized in a state or jurisdiction other than California with their respective headquarters and principal place of business located in a state or jurisdiction other than California. See ¶¶ 2-3, supra.

PLAINTIFFS' SECOND AMENDED COMPLAINT

8. The amount in controversy exceeds $75,000.00.

## INTRADISTRICT ASSIGNMENT

9. Intradistrict Assignment is appropriate at the San Jose Division because the Plaintiffs are residents of Santa Cruz County, State of California. Also, the Subject Property at issue in the present case lies within the territorial limits of the County of Santa Cruz, State of California.

## VENUE

10. Venue lies in this District pursuant to 28 USC § 1391(b).

11. The Subject Property lies within the territorial limits of the County of Santa Cruz, State of California.

## ALLEGATIONS

12. Through belief, Plaintiffs alleges that at all times herein mentioned each of the Defendants sued was the agent and employee of each of the remaining Defendants. Plaintiffs allege that each and every Defendant ratified the conduct of each and every other Defendant. Plaintiffs further allege that at all times said Defendants were acting within the purpose and scope of such agency and employment.

13. On or about March 21, 2007 a residential loan, ("PLAINTIFFS' LOAN"), was made to Plaintiffs.

14. On or about March 21, 2007 Plaintiffs executed a note, ("NOTE"), promising to pay Washington Mutual Bank, FA, ("WAMU"), in monthly payments.

15. Also on March 21, 2007 Plaintiffs executed a DEED OF TRUST document, ("DOT"), which identified the lender as WAMU, the Trustee was identified as California Reconveyance Company.

16. On September 25, 2008, the United States Office of Thrift Supervision, (OTS), seized WAMU for mismanagement of funds and placed it into the receivership of the Federal Deposit Insurance Corporation, (FDIC), which then sold many of WAMU's assets, supposedly including the DOT. Through belief, JP

1  MORGAN purchased WAMU. The story has been told publicly in many forums. Since the collapse of

2  WAMU, JP MORGAN has been sued so many times that its name has become synonymous and legendary

3  for mortgage abuse, mismanagement and fraud.

4  17.   On June 7, 2012 Title Trust Deed Service Company, in their purported capacity as foreclosure

5  Trustee, recorded a Notice of Default and Election to Sell, ("NOD"), with the Santa Cruz County records.

6
7  18.   On September 19, 2012 Title Trust Deed Service Company, in their purported capacity as foreclosure

8  Trustee, recorded a Notice of Trustee's Sale, ("NOTS"), with the Santa Cruz County records.

9  19.   Through belief, Plaintiffs allege that after the loan was originated and funded it was sold, bundled

10  into a group of Notes and subsequently sold to investors as a derivative "Mortgage Backed Security", that

11
12  was issued by the WAMU Mortgage Pass-Through Certificates Series 2007-HY6 Trust, ("TRUST"), and

13  that therefore none of the Defendants own this loan, or NOTE, and cannot be and are not the Beneficiary

14  under the DOT, or lawfully appointed Trustee under the DOT and have no right to declare a default, to cause

15  notices of foreclosure sale to issue or to be recorded, or to foreclose on Plaintiffs' interest in the Subject

16  Property.

17
18  20.   Through belief, US BANK is the current Trustee for the TRUST.

19  21.   Through belief, JPMORGAN is the servicer of the PLAINTIFFS' LOAN.

20  22.   As evidence of JPMORGAN's ongoing and organizational mismanagement and abuse, on April 13,

21  2011 the Deputy Comptroller of the Currency for Large Bank Supervision issued a Consent Order re

22  CHASE, in which she stated:

23
24        The Comptroller of the Currency of the United States of America ("Comptroller"),
      through his national bank examiners and other staff of the Office of the Comptroller of the
25    Currency ("OCC"), as part of an interagency horizontal review of major residential mortgage
      servicers, has conducted an examination of the residential real estate mortgage foreclosure
26    process of JPMorgan Chase Bank, N.A., New York, New York ("Bank"). The OCC has
      identified certain deficiencies and unsafe or unsound practices in residential mortgage
27    servicing and in the Bank's initiation and handling of foreclosure proceedings. The OCC has
      informed the Bank of the findings resulting from the examination.
28        The Bank, by and through its duly elected and acting Board of Directors ("Board"), has
      executed a "Stipulation and Consent to the Issuance of a Consent Order," dated April 13,

4

PLAINTIFFS' SECOND AMENDED COMPLAINT

2011 ("Stipulation and Consent") that is accepted by the Comptroller. By this Stipulation and Consent, which is incorporated by reference, the Bank has consented to the issuance of this Consent Cease and Desist Order ("Order") by the Comptroller. The Bank has committed to taking all necessary and appropriate steps to remedy the deficiencies and unsafe or unsound practices identified by the OCC, and to enhance the Bank's residential mortgage servicing and foreclosure processes. The Bank has begun implementing procedures to remediate the practices addressed in this Order.

Among the said "deficiencies and unsafe or unsound practices" the OCC found that CHASE:

(c) litigated foreclosure proceedings and initiated non-judicial foreclosure proceedings without always ensuring that either the promissory note or the mortgage document were properly endorsed or assigned and, if necessary, in the possession of the appropriate party at the appropriate time;

…

(e) failed to devote to its foreclosure processes adequate oversight, internal controls, policies, and procedures, compliance risk management, internal audit, third party management, and training …

23. It is common knowledge that JPMORGAN has recently settled a lawsuit with the federal government and most of the State's attorney generals where it was alleged to have engaged in ongoing and systematic foreclosure mismanagement and fraud.

24. Through belief, when a promissory note gets securitized, it ceases to remain a negotiable instrument and becomes a security. If Defendants attempt to characterize a loan as both a security and a negotiable instrument, it is called "double dipping". Plaintiffs believe that "double dipping" is an SEC violation.

25. The gravamen of Plaintiffs' lawsuit is, 1) Defendants and the TRUST are not holders or holders in due course of the NOTE and 2) Defendants and the TRUST are not beneficiaries under the DOT.

26. US BANK, JP MORGAN, the TRUST and their successors in interest do not fall within any of the classifications of holders in due course of the NOTE. The NOTE is not "bearer paper" and since its securitization, it is no longer a negotiable instrument.

27. US BANK, JP MORGAN, the TRUST and their successors in interest have not suffered any financial loss relating to the PLAINTIFFS' LOAN. More importantly, the certificate holders of the TRUST have not suffered any financial harm, as follows:

a) The TRUST's Master Servicer is required to make payments to the TRUST when loan payments

5

PLAINTIFFS' SECOND AMENDED COMPLAINT

are not made;

b) The Master Servicer is not a party with legal or equitable interest in the DOT;

c) TRUST passes payments made by the Master Servicer through to the certificate holders;

d) These payments are received as interest and not as a loan;

e) 1009 forms issued by the Trustee to each investor, through belief, treats each advance as a payment of interest and not as a loan which must be repaid by the investor;

f) The Master Servicer's claim is not secured;

g) The requirement for the Master Servicer to make payments is a concession given by the Master Servicer as an inducement to convince the Trustee to use its service;

h) The payments were not made for the benefit of the borrower.

28.   As a Constitutional matter, at a minimum, a party is required to suffer some actual or threatened injury as a result of Defendant's conduct to successfully assert a claim.

29.   US BANK, JP MORGAN, the TRUST and their successors in interest have never been the real party in interest as a lender or financial institution underwriting PLAINTIFFS' LOAN. Defendants are strangers to PLAINTIFFS' LOAN.

30.   The Plaintiff alleges that the only individual who has standing to foreclose is the holder of the NOTE because they have a beneficial interest. The only potential holders of the NOTE are the certificate holders of the TRUST because they are the end users and pay taxes on their interest gains; furthermore, all of the banks and Defendants in the middle were paid in full.

31.   California law provides that the power of sale can only vest in a person entitled to payments.

32.   Plaintiff alleges the Originator, WAMU, sold its interest in the PLAINTIFF's LOAN and was paid in full.

33.   Plaintiffs believe that Defendant, US BANK, alleges that it is the "holder and owner" of the NOTE and the beneficiary of the DOT.  However, the NOTE and DOT identify the Originator, WAMU as the holder.  Documents state that the original lender allegedly sold the mortgage loan to the TRUST, but no perfected chain of title exists between WAMU and US BANK.

6

PLAINTIFFS' SECOND AMENDED COMPLAINT

34.     In the alternative, Plaintiffs believe that Defendant, JPMORGAN, alleges that it is the "holder and owner" of the NOTE and the beneficiary of the DOT.  However, the NOTE and DOT identify the Originator, WAMU as the holder.  Documents state that the original lender allegedly sold the mortgage loan to the TRUST, but no perfected chain of title exists between WAMU and JPMORGAN.

## Securitization did not comply with applicable law or provisions of PSA

35.     Plaintiffs allege the Pooling and Servicing Agreement, ("PSA"), concerning the TRUST where the loan is held states that all intervening assignments and endorsements leading up to their inclusion in the TRUST must be present. This procedure has not been followed.

36.     Plaintiffs allege that PLAINTIFFS' LOAN was securitized, with the NOTE not being properly transferred from the Originator, WAMU to Trustee, US BANK. As set forth herein above, the TRUST was formed by execution of the PSA. The TRUST and PSA are subject to New York law. Plaintiffs are third party beneficiaries of the PSA.

37.     Plaintiffs allege that the purchase mortgage on the Subject Property, the debt or obligation evidenced by the NOTE and the DOT executed by Plaintiffs in favor of the original lender, was not properly assigned and transferred to Defendants operating the pooled mortgage funds or trusts in accordance with the PSA of the entities making and receiving the purported assignments to this trust.

38.     Plaintiffs allege that the PSA requires that each Note or Deed of Trust had to be endorsed and assigned, respectively, to the TRUST and executed by multiple intervening parties before it reached the TRUST. Here, neither the NOTE nor the DOT was transferred/negotiated or assigned to the TRUST by the closing date. Therefore, under the PSA, any assignments of the DOT beyond the specified closing date for the TRUST are void.

39.     The PSA requires that each Note or Mortgage had to be endorsed and assigned, respectively, to the TRUST and executed by multiple intervening parties before it reached the TRUST. Through belief, because

PLAINTIFFS' SECOND AMENDED COMPLAINT

the PLAINTIFF's LOAN was merely pledged to the TRUST, neither the NOTE nor the MORTGAGE was transferred/negotiated or assigned to the TRUST by the closing date. Therefore, under the PSA and applicable law, any assignment of the MORTGAGE beyond the specified closing date for the TRUST is void.

40.     Plaintiffs further allege that even if the DOT had been transferred into the TRUST by the closing date, the transaction is still void as the NOTE would not have been transferred according to the requirements of the PSA, since the PSA requires a complete and unbroken chain of transfers and assignments to and from each intervening party.

41.     Plaintiffs allege that the TRUST had no officers or directors and no continuing duties other than to hold assets and to issue the series of certificates of investment.

42.     Plaintiffs also allege that the NOTE was secured by the DOT.  Plaintiffs allege that as of the date of the filing of this Complaint, the DOT had not been legally assigned from the Originator to the Defendants.

43.     Plaintiffs allege that no documents or records have been produced that demonstrate that prior to the closing date for the TRUST, the NOTE was duly endorsed, transferred and delivered to the TRUST, including all intervening transfers. Nor have any documents or records been produced that demonstrate that prior to the closing date, the DOT was duly assigned, transferred and delivered to the TRUST, including all intervening assignments.

44.     Moreover, as cited at greater length below in Paragraph 44, sworn testimony now indicates that CHASE itself has NO record of its having received an assignment of the DOT. To wit, in a deposition taken by counsel[1] on May 9, 2012, Lawrence Nardi, an operations unit manager and mortgage officer with CHASE, stated under oath that the records of the many thousands of WAMU's mortgage loans sold by the Federal Depositors Insurance Corporation to CHASE simply "don't exist."

---

[1] The deposition was taken in Florida Fifth Judicial Circuit Case No. 2009-CA-005717.

PLAINTIFFS' SECOND AMENDED COMPLAINT

45.     The following is an excerpt from said deposition posted by Jeff Barnes, Esq., on his website[2]:

The 330 page deposition was taken by counsel for the homeowner on May 9, 2012 in the matter of JPMorgan Chase Bank, N.A. as successor in interest to Washington Mutual Bank v. Waisome, Florida 5th Judicial Circuit Case No. 2009-CA-005717.

It quotes Nardi as responding to questions of the homeowner's counsel as follows:

Q: (page 57, beginning at line 19): Okay. The — are you aware of any type of schedule of loans that would have been created to represent the — either the loans that were asset loans or the loans that were serviced by WAMU? Are you — was the — do you know if there is a schedule or database of loans like that?

A: (page 58, beginning at line 1): I know that there was a schedule contemplated in certain documents related to the purchase. That schedule has never materialized in any form. We've looked for it in countless other cases. We've never been able to produce it in any previous cases. It would certainly be a wonderful thing to have, but it's — as far as I know, it doesn't exist, although it was — it was contemplated in the documents.

Q: (beginning at page 260, line 18): Have you ever in your duties of being a loan analyst — a loan operations specialist, have you ever seen an FDIC bill of sale or a receiver's deed or an assignment of mortgage or an allonge?

A: (page 260, beginning at line 23): For loans, I'm assuming you're taling [talking][3] about the WaMu loan that was subject to the purchase here.

Q: (page 261, line 1): Right.

A: (page 261, beginning at line 2): No there is no assignments of mortgage. There's no allonges. There's no — in the thousands of loans that I have come into contact with that were a part of this purchase, I've never once seen an assignment of mortgage. There is simply not — they don't exist. Or allonges or anything transferring ownership from WAMU to Chase, in other words. Specifically, endorsements and things like that.

46.     Plaintiffs allege that any documents that purport to transfer any interest in the NOTE to the TRUST after the TRUST's closing date are void as a matter of law, pursuant to the applicable trust law and relevant portions of the PSA.

47.     Plaintiffs allege that the purported assignments and transfers of Plaintiffs' loan, debt or obligation did not comply with California law, and/or other applicable laws and statutes, and, thus, do not constitute valid and enforceable "True Sales." Any security interest in the Subject Property was, thus, never perfected. The alleged holder of the NOTE is not the beneficiary of the DOT. The alleged beneficiary of Plaintiffs' DOT does not have the requisite title, perfected security interest or standing to proceed; and/or is not the real party in interest with regard to any action taken or to be taken against the Subject Property.

[2] http://foreclosuredefensenationwide.com/?p=469#respond
[3] Typo corrected.

PLAINTIFFS' SECOND AMENDED COMPLAINT

48.     As set forth hereinabove, Defendants, or their predecessors in interest, violated the express terms of the PSA which is a Trust Agreement and which, along with another document, the Mortgage Loan Purchase Agreement, is the operative securitization document created by the finance and securitization industry to memorialize a particular securitization transaction. The PSA specifies the rights and obligations of each party to the securitization transaction to each other, and is a public document on file with the SEC. More specifically, the PSA requires strict compliance with its procedures and timelines in order for the parties to achieve their specific objectives.

49.     Securitization is the process whereby mortgage loans are turned into securities, or bonds, and sold to investors by Wall Street and other firms. The purpose is to provide a large supply of money to lenders for originating loans, and to provide investments to bond holders which were expected to be relatively safe. The procedure for selling of the loans was to create a situation whereby certain tax laws known as the Real Estate Mortgage Investment Conduit (hereinafter "REMIC") Act were observed, and whereby the Issuing Entities and the Lenders would be protected from either entity going into bankruptcy. In order to achieve the desired "bankruptcy remoteness," two "True Sales" of the loans had to occur, in which loans were sold and transferred to the different parties to the securitization.

50.     A "True Sale" of the loan would be a circumstance whereby one party owned the NOTE and then sold it to another party. An offer would be made, accepted and compensation given to the "seller" in return for the NOTE. The NOTE would be transferred, and the DOT assigned to the buyers of the NOTE, with an Assignment made every step of the way, and, furthermore, the NOTE would be endorsed to the next party by the previous assignee of record.

51.     In order for the Trustee of the TRUST to have a valid and enforceable secured claim against Subject Property, the Trustee must prove and certify to all parties that, among other things required under the PSA:

    a)  There was a complete and unbroken chain of endorsements and transfers of the NOTE from and to each party to the securitization transaction (which should be from the (A) Mortgage Originator to the

10

PLAINTIFFS' SECOND AMENDED COMPLAINT

(B) Sponsor to the (C) Depositor to the (D) TRUST, and that all of these endorsements and transfers were completed prior to the Trust closing dates (see discussion below); and

b)  The Trustee of the TRUST had actual physical possession of the Note at that point in time, when all endorsements and assignments had been completed.  Absent such proof, Plaintiffs allege that the TRUST cannot demonstrate that it had perfected its security interest in Subject Property that is the subject of this action.  Therefore, if the Defendants, and each of them, did not hold and possess the NOTE on or before the closing date of the TRUST, they are estopped and precluded from asserting any secured or unsecured claim in this case.

52.  Plaintiffs alleges that pursuant to the terms of the PSA, the Originator, WAMU, agreed to transfer and endorse to the Trustee for the TRUST, without recourse, including all intervening transfers and assignments, all of its right, title and interest in and to the NOTE and all other mortgage loans identified in the PSA.

53.  Plaintiffs allege that the PSA provides that the transfers and assignments are absolute, were made for valuable consideration, to wit, in exchange for the certificates described in the PSA, and were intended by the parties to be a bona fide or "True Sale."  Since, as alleged herein below, True Sales did not actually occur, Plaintiffs allege that the Trustee for the TRUST is estopped and precluded from asserting any secured or unsecured claim in this case.

54.  Plaintiffs allege that as a result of the PSA and other documents signed under oath in relation thereto, the Originator, Sponsor and Depositor[4] are estopped from claiming any interest in the NOTE that is allegedly secured by the DOT on the Subject Property.

55.  Plaintiffs allege that the NOTE in this case and the other mortgage loans identified in the PSA, were never actually transferred and delivered by the Originator, WAMU to the Sponsor or to the Depositor or

---

[4] The Originator is the lender who originally funded the loan; the Sponsor "collects" or "buys" the loans from different lenders, combines them, and then "sells" them to the Depositor; the Depositor "deposits" the loans into the Issuing Entity Trusts, and then, various bonds and certificates are sold; the Issuing Entity would be the "legal owner" of the Notes, though the actual documents would be held by Custodians.

PLAINTIFFS' SECOND AMENDED COMPLAINT

from the Depositor to the Trustee for the TRUST. Plaintiffs further allege that the PSA herein provides that the mortgages were to be delivered to the TRUST, which files include the DOT.

56.     Based upon the foregoing, Plaintiffs allege that the following deficiencies exist, in the "True Sale" and securitization process as to this DOT which renders invalid any security interest in the DOT, including, but not limited to:

   a) The splitting or separation of title, ownership and interest in the NOTE and DOT of which the original lender is the holder, owner and beneficiary of DOT;

   b) When the loan was sold to each intervening entity, there were no Assignments of the DOT to or from any intervening entity at the time of the sale. Therefore, "True Sales" could not and did not occur;

   c) The failure to assign and transfer the beneficial interest in the DOT to Defendants, in accordance with the PSA of the Defendants, as Securitization Participants;

   d) The failure to endorse, assign and transfer the NOTE to Defendant, JP MORGAN, as Trustee for the TRUST, in accordance with the PSA and California law;

   e) No Assignments of Beneficiary or Endorsements of the NOTE to each of the intervening entities in the transaction ever occurred, which is conclusive proof that no True Sales occurred as required under the PSA filed with the SEC; and

   f) Defendants violated the pertinent terms of the PSA.

57.     Plaintiffs allege that none of the parties to the securitization transaction, or any of the Defendants in this case, hold a perfected and secured claim in the Subject Property; and that all Defendants are estopped and precluded from asserting a secured or unsecured claim against the Subject Property.


**Defendants abandoned all interest in the Subject Property**

58.     As stated, *supra*, Plaintiffs believe that the Originator, WAMU sold its interest in the PLAINTIFF's LOAN and was paid in full.

PLAINTIFFS' SECOND AMENDED COMPLAINT

59.     Plaintiff alleges that there was never an assignment of mortgage to US BANK or the TRUST to provide notice of this transfer of the PLAINTIFFS' LOAN.

60.     Plaintiff believes that failing to record an Assignment of DOT after so many years, the party with the interest in the loan has either abandoned the DOT or the DOT was never assigned to the new lender, making the DOT a nullity.

## The MORTGAGE does not secure the NOTE

61.     Any assignment of a DOT without proper transfer of the obligation that it secures is a legal nullity. Plaintiffs allege the DOT was separated from the NOTE at least once, and remains separated, making the DOT unenforceable, null, deficient and illegal. *See Carpenter v. Longan, 83 U.S. 271 (1872)*, "The note and mortgage are inseparable; … the mortgage can have no separate existence".

62.     Plaintiff alleges that the PLAINTIFF's LOAN was converted into a mortgage backed security and the NOTE and DOT were permanently severed.

63.     Plaintiff alleges that the NOTE and MORTGAGE were for many years owned by at least two separate entities.

64.     Plaintiff alleges the PLAINTIFF's LOAN was sold, turned into a security, pooled, and therefore the certificate holder(s) may no longer claim that they are a real party in interest.

65.     Plaintiff alleges that a securitization did occur, and the NOTE cannot be re-attached to the MORTGAGE through adhesion.

## Unrecorded Assignments are Fraudulent and/or Void

66.     Plaintiffs allege that for years, Defendants failed to record any assignment in the DOT despite the fact that PLAINTIFFS' LOAN was sold.

67.     Plaintiff alleges that all conveyances are required to be recorded by statute.

PLAINTIFFS' SECOND AMENDED COMPLAINT

68.    Plaintiff alleges that conveyances such as mortgages and assignments that remain unrecorded for years are fraudulent and void.

69.    Plaintiff alleges that all assignments of mortgage must be written and recorded.

70.    Plaintiff alleges that assignments of mortgage require proper identity and certified address of mortgagee or assignee.

71.    Plaintiff alleges any change in the lender that would hold a security interest or lien in a property must be recorded.

72.    Slanders of title have arisen regarding unrecorded claims in the chain of title. This action is to determine the validity of the DOT as to any unrecorded assignees over a period of years. The chain of title is broken, making full title insurance impossible and a difficult sale of the home without this Quiet Title Action.

73.    Because assignments of an interest were not physically recorded (thereby imparting constructive notice), Defendants did not comply with the race (first in time) or (constructive or actual) notice statutes and therefore, senior/junior property rights cannot be determined when a discrepancy arises in property boundary lines. The destruction of the Subject Property's verifiable clear title is actionable.


**Assignment of DOT**

74.    The Grantor never held or owned the NOTE.

75.    Any assignment of a MORTGAGE without proper transfer of the obligation that it secures is a legal nullity. *See Carpenter v. Longan, 83 U.S. 271 (1872),* "The note and mortgage are inseparable; ... the mortgage can have no separate existence".

76.    The Grantor did not have standing or authority under the DOT to assign any interest in the DOT. The Grantor could only assign what it owned, which was nothing.

77.    Through belief, the signatory of the Grantor was not an Assistant Secretary, an officer, or even an

employee of Grantor.

78.     Executing documents in false or non-existent capacities is prima facie evidence of robo-signing.

79.     Through belief, the signatory of the Assignment of DOT was not qualified to perform the required due diligence required before executing the Assignment document.

80.     Execution of legal foreclosure documents by personnel who are not thoroughly acquainted with the file is prima facie evidence of robo-signing.

81.     Plaintiff disputes the authenticity and authority to make the Assignment. A transferee cannot acquire rights if either the transferor or the transferee engaged in fraud or illegality.

82.     The "Assignment Of Mortgage" suffers from many infirmities, both legal and factual. It should be cancelled from the Official Records of Santa Cruz County. Any and all interests which rely on this document should likewise be rescinded or voided as well.

## DEFENDANTS LACK STANDING TO FORECLOSE THE SUBJECT PROPERTY

83.     An actual controversy has arisen and now exists between Plaintiffs and Defendants specified hereinabove, regarding their respective rights and duties, in that Plaintiffs contend that Defendants do not have the right to foreclose on the Subject Property because Defendants have failed to perfect any security interest in the Subject Property.  Thus, the purported power of sale by the above specified Defendants no longer applies. Plaintiffs further contend that the above specified Defendants do not have the right to foreclose on the Subject Property because said Defendants did not properly comply with the terms of Defendants' own securitization requirements.

84.     Plaintiffs allege that the only individual who has standing to foreclose is the holder of the NOTE because they have a beneficial interest. The only potential holders of the NOTE are the certificate holders of the TRUST because they are the end users and pay taxes on their interest gains; furthermore, all of the banks and Defendants in the middle were paid in full and the certificate holders have suffered no financial loss.

85.     Plaintiffs request that this Court find that the purported power of sale contained in the NOTE and DOT has no force and effect at this time, because Defendants' actions in the processing and handling of Plaintiffs' loan involved numerous violations of State laws designed to protect borrowers. Plaintiffs request that title to the Subject Property remain in their name and deem that any attempted sale of the Property is "unlawful and void".

86.     Plaintiffs allege that in order to conduct a foreclosure action, a person or entity must have standing.

87.     Plaintiffs allege that pursuant to California law, to perfect the transfer of mortgage paper as collateral, the owner should physically deliver the note to the transferee. Without physical transfer, the sale of the note is invalid as a fraudulent conveyance or as unperfected.

88.     The NOTE identifies the entity to whom it was payable, the original lender, WAMU. Therefore, the NOTE cannot be transferred unless it is endorsed; nor are there any other notices which establish that the original lender endorsed and sold the NOTE to another party.

89.     Plaintiffs dispute the authenticity and authority of each and every endorsement that may have been made to the NOTE. A transferee cannot acquire rights if either the transferor or the transferee engaged in fraud or illegality.

90.     Furthermore, insofar as the parties to the securitization of the NOTE and DOT base their claim that the NOTE was transferred or assigned to Defendant, US BANK, the Trustee of the TRUST, by a perfected chain of title starting with the original lender, it is well established state law that the assignment of a deed of trust does not automatically assign the underlying promissory note and right to be paid and the security interest is incident of the debt.

91.     Pursuant to California law, to perfect the transfer of mortgage papers as collateral for a debt, the owner should physically deliver the note to the transferee. Without physical transfer, the sale of the note is invalid as a fraudulent conveyance, or as unperfected. The NOTE specifically identifies the party to whom it was payable to and the NOTE, therefore, cannot be transferred unless it is endorsed.

PLAINTIFFS' SECOND AMENDED COMPLAINT

92.     Defendants have not produced any evidence that the NOTE has been transferred via a perfected chain of title from the originator, WAMU to the Trustee for TRUST, US BANK.

93.     Plaintiffs submit judicial notice on the attached Securitization report prepared by independent Certified Mortgage Securitization Auditor Robert K. Ramers, attached hereto and incorporated by reference as ("EXHIBIT A").

94.     Additionally, Ramers will be listed on Plaintiffs' expert witness list for trial.

## FIRST CAUSE OF ACTION – VIOLATION OF CALIFORNIA CIVIL CODE § 2923.5

95.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

96.     As stated *supra*, on June 7, 2012 Defendants filed their NOD with the Santa Cruz County records. The Defendants' NOD stated, "The mortgagee, beneficiary, or authorized agent tried with due diligence but was unable to contact the borrower to discuss the borrower's financial situation and to explore options for the borrower to avoid foreclosure in compliance with Cal. Civ. Code Section 2923.5."

97.     Plaintiffs' allege that Defendants did not use 'due diligence' to contact the Plaintiffs 30 days prior to recording the notice of default on June 7, 2012. Plaintiffs could have been contacted with only nominal effort. Plaintiffs were fully available to meet with Defendant to explore foreclosure options.

98.     Plaintiffs' attempts to contact Defendants were unanswered prior to recording the NOD.

99.     Defendants failed to evaluate Plaintiffs' finances prior to recording the NOD.

100.    Defendants failed to give Plaintiffs a HUD, (United States Department of Housing and Urban Development), telephone number prior to the recording of the NOD.

101.    Defendants failed to advise Plaintiffs of their right to meet with Defendant to discuss foreclosure avoidance options prior to the recording of their NOD.

PLAINTIFFS' SECOND AMENDED COMPLAINT

102.   Defendants did not comply with the requirements of California Civil Code § 2923.5 because Defendants did not contact Plaintiffs prior to the date Defendants recorded the NOD.

103.   If California Civil Code § 2923.5 is not complied with, then there is no valid notice of default, and without a valid notice of default, a foreclosure sale cannot proceed. *Skov v. U.S. Bank*, 143 Cal. Rptr. 3d 694, 700 (2012).

104.   The available, existing remedy is found in the ability of a court in § 2924g, subdivision (c)(1)(A), to postpone the Trustee's Sale until there has been compliance with § 2923.5. *Id.*  The NOTS identified, *supra*, should also be rescinded.

105.   The legislature intended to allow a private right of action under § 2923.5. *Id.* at 701.

## SECOND CAUSE OF ACTION – QUIET TITLE

106.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

107.   Plaintiffs are entitled to equitable relief by a judicial decree and order declaring Plaintiffs to be the title owner of record of the Subject Property as to the effective date of said cancellation, and quieting Plaintiffs' title therein and thereto subject only to such legitimate liens and encumbrances as the Court may deem void, and avoiding any liens or encumbrances upon the Subject Property created by Defendants or by their putative predecessors, or by any of them.

108.   Plaintiffs allege that they have discharged their debt.

109.   Plaintiffs have presented a valid and viable offer of tender.

110.   Plaintiffs have been damaged by the cloud of title of their property, making it difficult if not impossible to sell the Subject Property with title insurance. Plaintiffs respectfully request that this Honorable Court find in their favor and enter an Order to Quiet Title and final judgment that the Defendants and their successors and assigns be forever barred from asserting any rights, lien, title or interest in the Subject

18

PLAINTIFFS' SECOND AMENDED COMPLAINT

Property inconsistent with the interest or claims of the Plaintiffs set forth in this Complaint and any other relief the Court deems appropriate.

111.    Defendants' interests in the Subject Property are junior, inferior and subordinate to the Plaintiffs' superior interest in the Subject Property and should be quieted.

112.    Plaintiffs desire and are entitled to a judicial declaration quieting title to the Subject Property in favor of the Plaintiffs.

113.    Plaintiffs hereby withdraw, per the order issued on or about January 6, 2014, their causes of action for RICO and RESPA.

        Plaintiffs declare that they are not experts in the law but they do know right from wrong and intend no one harm by their word or deed. Therefore, if any human being is damaged by any statement(s) herein and informs Plaintiffs of the facts, they will sincerely make every effort to amend their allegations. Plaintiffs hereby reserve the right to amend and make amendment to this document as necessary in order that the truth may be ascertained and proceedings justly concluded. If a party given notice by means of this document has information that would controvert and overcome this affidavit, he/she is respectfully requested to advise Plaintiffs IN WRITTEN AFFIDAVIT FORM, sworn/affirmed true, correct, complete, and not misleading upon the Affiant's full commercial liability, within thirty (30) days from the receipt hereof, if Affiant can prove with particularity, by stating all requisite, evidentiary facts and all requisite, actual law—not mere ultimate facts and conclusions of law—that Plaintiffs' declarations herein are substantially and materially false, sufficiently to alter materially their status and factual statements. Silence stands as consent to, and tacit approval of, the factual declarations herein being established as matters of law.

## PRAYER FOR RELIEF

        **WHEREFORE**, Plaintiffs prays this court to enter judgment against Defendants, as follows:

A.      For a postponement of the Trustee's Sale until the Defendants comply with the provisions within

California Civil Code § 2923.5;

B.      For an order compelling each of the Defendants to transfer or release legal title and any alleged encumbrances thereon, and possession of the Subject Property to the Plaintiffs;

C.      For a judgment forever enjoining each of the Defendants from claiming any estate, right, title or interest in the Subject Property;

D.      For a declaration that any future foreclosure based on PLAINTIFF's LOAN be deemed and declared illegal and void, and that further proceedings in connection with the foreclosure be enjoined;

E.      For such other further relief as the court may deem just and proper.

Dated: _Jan. 16_, 2014.

Respectfully Submitted,

*Kendra Anderson*

*Lance Anderson*

Kendra and Lance Anderson, Plaintiffs Pro Se
2326 Antonelli Court
Santa Cruz, CA 95062
Tele: (831) 234-5156
santacruzlance@gmail.com

20

PLAINTIFFS' SECOND AMENDED COMPLAINT

1

## PROOF OF SERVICE BY MAIL

2

3  On January _____16_____, 2014, I served the documents described as:

4

5    1.  Plaintiffs' Second Amended Complaint

6

7  On all interested parties in this action by placing a true and correct copy thereof in a sealed envelope, with

8  first-class postage prepaid thereon, and deposited said envelope in the United States mail addressed to:

9

10  PHILIP A. MCLEOD, CASB No. 101101
   philip.mcleod@kyl.com

11  JESSICA LUHRS, CASB No. 284846
   jessica.luhrs@kyl.com

12  KEESAL, YOUNG & LOGAN
   A Professional Corporation

13  450 Pacific Avenue
   San Francisco, California 94133

14  Telephone: (415) 398-6000

15  Facsimile: (415) 981-0136

16  *Attorneys for Defendants*

17

18  I declare under penalty of perjury that the foregoing is true and correct.

19

20  Executed on __Jan. 16__, in __Capitola, CA__.

21          __2014__          (City, state of signing)

22

23  Respectfully Submitted,

24  *Kendra Anderson*

25

26  *Lance Anderson*

27  Kendra and Lance Anderson, Plaintiffs Pro Se
   2326 Antonelli Court

28  Santa Cruz, CA 95062
   Tele: (831) 234-5156
   santacruzlance@gmail.com

21

PLAINTIFFS' SECOND AMENDED COMPLAINT